By JUDGE TAYLOR.
The land described in the complainants bill is part of the 400,000 acres granted by the United States to this State, for the purposes specified in the act making such grant.
The whole of the lands thus granted, had been previously sold by the United States to individuals, and in conformity with acts of Congress passed for the relief of the purchasers, had been relinquished by the purchasers to the United States, and the amount which had been paid thereon, applied to the payment of other lands bought of the United States, by the persons makingsuch relinquishments.
The General Assembly of this State passed a law, which was approved by the Governor on the 20th January, 1829, *415 <‘ to sell and dispose of” the said 400,000 acres of land; by which act, a Land Office was established in the town of Courtland, and a Register appointed, with power to issue certificates of purchase to such persons as were authorized to receive them. The said act also provided for the appointment of twelve commissioners, to examine and value the lands. These commissioners were required to divide themselves into four companies, each of which companies was required to examine, value, &c. and moreover, to “ take a note or memorandum of all improvements, and the names of each and every person who may be entitled to pre-emption, according to the provisions of this act.” By the 6th section of the act,, it is required that the “ commissioners when they have completed the examination of the whole of said lands, shall assemble together, and return a list of the class, &c. together with the names'and improvements of persons occupying or cultivating, &c. to the Register of the Land Office, &c.”
The 8th section of the act is in the following words, viz: “ That, to enable the said Register to determine what persons are entitled to such pre-emptions, it shall be the duty of each of said companies of commissioners to ascertain by evidence, satisfactory to them, who is entitled to the pre-emption to any particular tract or tracts of said land, according to the provisions hereafter enacted; and to enable them to settle any disputed claims, they shall be authorized to procure the affidavit of three disinterested neighbors, or other satisfactory testimony, and the said commissioners are each invested with the power of administering oaths to witnesses; and the decision of each company of said commissioners shall be final as to the right of pre-emption, and the said commissioners shall make return thereof as above stated, to the Register.”
The bill upon which this motion is founded, alleges that the complainant, Martin, purchased the north east and south east quarters of section 31, in Township 6, range 11, of the United States, in the year 1818, which he afterwards relinquished to the United States, and which are included in the 400,000 acres granted to this State, and that he continued in possession thereof until the8th of January, 1839, when he rented the same to his complainants, Isaac and Samuel Bell, and agreed that they should have any benefit which they might lawfully derive from the possession of said land, under the act above referred to. The bill then proceeds to set out the manner in which the defendants *416 first settled on a part of said lands; that by a writ of forcible entry and detainer, he had dispossessed the Paynes before the grant was made by the United States to this State; that the three commissioners who acted in that part 0f the State,' in which the above described land lay, after having all the evidence which the several claimants to the right of pre-emption in said land could adduce, awarded the same to the complainants, the Bells; but subsequently, and after one of said commissioners who acted in the first instance had been succeeded by another person, they gave to the said defendants a new trial, and awarded to the said Mary Payne, the pre-emption in the west half of the southeast quarter, and to the said Williams, in the west half of the north-east quarter of the above described land. The bill prays an injunction restraining the Register from permitting said defendants or any other person to enter the land, except said complainants, and for genera] relief.
This motion is supported by counsel, who take the following positions, viz:
1st. That the possession of the complainant, Martin, obtained by virtue of his purchase, from the United States, which was continued after he relinquished his title to the land, and until after the act of the General Assembly for the sale of the land was passed, vested in him a right of possession against third persons, which would be protected by this Court.
2d. That by virtue of said right of possession, that act of Assembly secured to him a preference in entering the land, and of course, the right to ask the aid of this Court -in securing to him such preference.
3d. That if he had no right by virtue of his possession, before the passage of that act, yet the act itself conferred upon him a right valuable in itself, and therefore the' subject of adjudication in this Court.
4th. That if either of these positions be sustained, the Legislature had no constitutional power to divest this Court of its jurisdiction, and therefore the provision in the act-which makes the adjudication of the commissioners ** final,” is unconstitutional, and null and void.
5th. That if all these points be untenable, the first decision of the commissioners, by which they determined that the complainants, the Bells, were entitled to the preemption, was binding upon them, and vested in them that right, which this Court will protect.
The ground taken with regard to the merits of the con *417 fcroversy, further than they are involved in the points above stated, it is unnecessary to examine.
There is no controversy with respect to the intention of the General Assembly, as expressed in the above act; all agree that it was intended to vest each set of commissioners with the power to decide who had the right of preemption in the different tracts of land, to a right of preference in which there might be a conflict between different persons, and that from their decision, there should be no appeal; but it is contended that the provision was one which the Legislature had no power to make; that this Court has a general supervising control over all inferior judicial tribunals which may be erected in the State, of which it cannot be deprived.
It is certainly true in general, though there are exceptions, that wherever tho property of the citizen is involved in any way by the claim of another person, the right of appeal to this Court is secured to him, and no department of the Government can divest this Court of its jurisdiction in such case; but the question here, is, have the complainants or either of them any property in the land in controversy? and I here use the term propertjq in its broadest sense, including as well the right of possession as the right of property.
It is at once admitted, that by the decisions of this Court, it has been determined that persons who had relinquished lands upon which they resided, or which they cultivated, either themselves or by their tenants, were entitled to the possession of such lands against all third persons, while they remained undisposed of by the United States.
The soundest policy required’such a decision; a different one would have encouraged strife and discord throughout the State, and produced innumerable evils. Many hundred thousand acres had been relinquished; in numerous instances, extensive improvements had been made by the first purchaser; and those who regarded their own interest alone, would have used every exertion which art, and often force, could have devised, to obtain the use of such valuable possessions, in the hope that years might revolve before any disposition would be made of them by the government. But moreover, in a trial of this description, it would only be considered who was the person first in possession, and to him, in conformity with all law* tvould that possession be restored.
*418 But although such was the situation of the purchaser who had relinquished the land purchased as regarded third persons, he certainly had no right against,'or claim upon the United States* The agreement on the part of the United States to rescind the contract of purchase and sale, was received by him as a privilege granted to him of mere favor, and when this offered bounty was accepted by him, he certainly cannot be heard when he contends for a right in that, all right to which he was bound to relinquish, and did relinquish, before he was entitled to the bounty. As against the United States then, before the grant was made to the State, the complainants or - either of them had no right, even of possession; after the land was relinquished, and of course after the grant was made, the grantee stood in .the same situation which the grantor occupied before. It is contended, however, that the law giving the right of pre-emption to persons in a particular situation, is unconstitutional, unless those persons had some right in the land to which this preference is given them; and to support this doctrine, the 26th section of the bill of rights is referred to. If this be th e case, it is totally unnecessary for the extraordinary remedy which is now asked for to be afforded, because the defendants can receive no right by virtue of an unconstitutional law. But it is believed, that the position assumed by the complainants’ counsel, cannot be sustained. This section was never intended to prevent any “privilege, honor or emolument,” from being granted by the State; but simply and singly, to prohibit the granting or conferring any “ privilege, honor or emolument,” and making such grant hereditary. Every day’s experience proves, that privileges, honors and emoluments, are often granted and conferred in. our State, and in the United States. What is the exemption of certain descriptions of persons from serving on juries, working on roads, &c. but granting a privilege? what is bestowing a brevet appointment in the army, but conferring an honor? and what are the salaries annexed to different offices, but emoluments?
If the complainants had no interest in the land in opposition to the rights of the State, before the passage of the law allowing pre-emptions, did that act vest him with such an interest as gives him a right to the interposition of this Court, to secure him in its enjoyment? This question will be answered, as if the law clearly gave him the preference which the commissioners refused to recognise.
*419 The State owns extensive public domains, and wishes to make sale of them. To effect this object, a law is passed, by which persons in particular situations, are authorized to make purchases at fixed prices, in preference to all others. Certainly this is all legal; no person can complain, because the rights of no one is invaded. But the law providing for this mode of sale, also points out ■certain persons who are to determine whether those who apply to purchase, are within its provisions, and declares that their decision shall be final, and this, it is insisted, could not be done. Why? Because, it is answered, the law vested the right to a preference in the land in the persons coming within the provisions of the statute, and thereby gave them rights which this Court will protect. But the law must certainly be taken altogether. Upon certain conditions, particular privileges are, granted to individuals; one of those conditions is, that certain men shall say they are entitled to them. Certainly they have no right to the privilege until this is done. Suppose the law had provided, that the poorest persons in the State should have the preference; that the commissioners should determine who were entitled under this provision; and that their decision should be final. This would certainly have been a benefit gratuitously bestowed, and the poor rejected by the commissioners, could have had no redress in this Court.
I am’ decidedly of opinion, that the part of the law giving preferences to one person over another, in entering the public lands, is a matter of favor; that the General Assembly had the right to prescribe the terms on which that lavor would be granted, and having said that the commissioners, and they alone shall determine on whom the bounty of the State shall be conferred, no person has a right to appeal from their decision. The cases adduced by complainants’ counsel, it is believed, do not mitigate against this opinion, as in these cases, private rights were invaded, or at least supposed to be.
I am also of the, opinion that the commissioners could revise their proceedings, and re-consider their opinions, at any time before their return was made to the Register, and their first determining in favor of complainants, if their ultimate decision and return-to the Register were in favor of the defendants, gave to the complainants no right whatever; and of this opinion is the Court. The motion, therefore, is overruled.